Formula Please check the link in the description for the recipe. Good afternoon, Your Honors. May it please the Court, Michael Baldessari on behalf of Defendant Jeffrey Quavey, I'd like to reserve three minutes for rebuttal. Your Honor, with respect to the statutory interpretation argument that comprises points one and two of our brief, just by way of sort of three simple organizing thoughts before we start to parse this statute, our argument is simple. Our argument is that the government just charged the wrong crime. If you're right, then he didn't commit any crime, because you're arguing paragraph four and his conduct doesn't really fall within paragraph four. We're arguing that paragraph four would have been the correct crime to charge and... But if his conduct doesn't fall within paragraph four, why would it be the correct paragraph to charge? Are you saying that what he did does fall within paragraph four? I'm saying for purposes of the statutory construction argument, and I don't want to waive anything should we end up back on a retrial, but for sure, what the government tried to prove and what the jury found they proved was paragraph four, without question. Well, I'm not sure what you said without question. Paragraph four, what we're abbreviating, what we're doing makes it a penalty, false statement with respect to material fact, in any document required by the immigration laws prescribed to you under, or normally presents such application, commits an offense. My understanding of what happened is that he didn't, in most of these cases anyhow, he didn't present the false document. He helped educate people on what to say when they were interviewed during the course of the interviews, and he prepared the false documents, but he never presented the false documents. That is correct, that he never did. I think the reason that he would still, potentially, that that's the right paragraph to charge him is because with respect to count one, it was charged as a conspiracy to do precisely that, and with respect to count four, that charged it with a specific individual named BH, a woman who was identified in the indictment as BH. He was charged with aiding and abetting her, and in those cases, the documents absolutely were presented both to the embassy in Togo, as well as to immigration officials upon their arrival in the United States. So it was very clear sitting through this trial that they thought they were proving precisely the conduct prohibited by paragraph four. Let me ask you this. If you're familiar with Moscow, M-O-S-K-A-L? Yes, Your Honor. Why shouldn't we look at what the Supreme Court said in Moscow? It's a different statute, but they define falsely made in Moscow, looking at a different statute, to include real documents, authentic documents, procured by fraud. Now if we take what the court said in Moscow, using the same language, although a different statute, why shouldn't we then look at the first paragraph of the statute here and interpret what were authentic documents as nevertheless being falsely made within the confines of paragraph one because they were procured by fraud? Why isn't it exactly the same analogy? For a few reasons. Moscow's a problem for us. I know the court knows that, and the first time I read it, I thought it was a bigger problem. The reason is that I think the right way to read Moscow has to be narrowly for a few reasons. Number one, if Moscow meant to be more broadly construed, it would have to have overruled at least Gilbert, Statz, and Davis. There's no discussion of it overruling those cases where falsely made had been held to mean forgeries. So that's one reason why I think Moscow has to be narrowly read. Another reason is that I think part of, with all due respect, I think part of the Moscow analysis is simply wrong with respect to the cases in this sense. We have this kind of culture on here where we tend to follow the law that the Supreme Court gives us. So you might think it's wrong, but... Well, but I understand that, of course. I'm just trying to articulate why I think it's appropriate to read Moscow narrowly, and that is because in the argument regarding whether there's a settled common law usage for falsely made, it relies on three cases, Hartman, Shortoff, and a case called In Re, Prince Toulouse-Lautrec. And what the Sixth Circuit says about Moscow in Merklinger I think is right, and that is that really only one of those cases stands for precisely the proposition for which the court cites it. The other reason why I think it's okay and appropriate to read Moscow narrowly is because Moscow also says that what we're going to do, in that case involving title, involving false titles, is we're going to give effect to every word in the statute. And I think applying that point of statutory construction or that Well, let's look at that. I guess you're going to what any such document means. To several things. That's the first one, yes, Judge. Because if the government's right, the word such means nothing. No, it means immigrant. It means immigrant or non-immigrant. And then it means everything. Because what it means is your client's guilty. Because it's the same words. Look at the list. It lists all the items. Immigrant, non-immigrant. And it goes on. Permanent, permanent. It repeats them all. Except for visa. Visa is either immigrant or non-immigrant. And then it's such visa. So it's got to mean immigrant or non-immigrant. And then he used it knowing it to be having been procured by fraud. Your Honor, the reason that I say It seems so clear. I just don't understand. Well, the reason I say that is because if Congress meant to simply relist, because the argument around any such is does it modify the verbs at the beginning, as we say, or the nouns that immediately precede it. If Congress meant to simply relist the nouns, the word such would mean nothing. They would say if you have a forged document, to shorten it, a forged counterfeited document that is a visa, alien registration card, etc., etc. Or if you use or possess any, and then it relists them again. No, I tend to think you're right there. At first reading, there seemed to be some ambiguity in the statute. But that's precisely the issue that the Christic opinion dealt with. Because of the ambiguity, Judge O'Scallion went through the legislative history of the statute and came out with a precise reading that Judge Greenberg just stated. As such, I think, is the phrase. Any such relates to immigrant, non-immigrant visa. And I think, obviously, Christic also ignores really what it purports to rely on, and that is give meaning to every word. I think Christic never addresses the fact that under its analysis of what this statute means, one could take white out. And I will tell the court in trying to figure this out at the trial level and to prepare here, I whited out the word such. And that's when it means, that's when it has meaning. If the word such doesn't revert back to the verbs, I don't think it changes the statute. And therefore, I think it's meaningless. I think the other problem with Christic is I think that it is a case that gives our side some beautiful language about this being a statute that's a masterpiece of obfuscation and that Congress achieved in 124 words confusion that it usually takes. I don't understand why it's meaningless to be first immigrant or non-immigrant because it's making it clear that immigrant or non-immigrant visa, whether immigrant or non-immigrant, is involved here. Why is it meaningless? I think it's meaningless, Your Honor, because the statute says, whoever knowingly forges, counterfeits, or does any of these other verbs with a document that is an immigrant or non-immigrant visa, permit, border crossing card, it lists them all. And then it says, or if you possess, use, or accept any, and then it lists them all again. Right, except for a visa. It doesn't list immigrant or non-immigrant. For visa, it simply says such. So it's a shorthand way of saying the same thing. It just didn't repeat those two words. And, Your Honor, It's actually two to one word for three. Also, doesn't such refer to the kinds of documents necessary for entry into the United States? Well, I think it says If you have a visa, it's not necessary for entry into the United States. That's true. I would imagine there are numerous types of documents. And the truth is, it could mean all of these things. The problem is, for Jeffrey Quavey, we don't know. We don't know, and we should know. And that's why I think Kristic really gives the rule of lenity after saying how confusing this is, after saying that there are two plausible readings. I think it really gives that analysis short shrift. And I think that under the government's reading, we not only come dangerously close to rendering the word such surplusage, I think we come close to making paragraph four completely unnecessary as far as how these statutes play out in the real world. So for those reasons, that is why I think it's appropriate to read Moscow narrowly. I think that Kristic was wrongly decided. I think that it doesn't do what it says it's going to do, which is give every word meaning. How does that interpretation that Kristic came up with, that Judge Greenberg just mentioned to you, how does that make paragraph four irrelevant? One is going to basically perjure it, and the other one is going to fraudulently make a record of the document. Yes, Your Honor, because if the first part of paragraph one covers documents that are genuine, then when we get to the last section of paragraph one, if you know that it was procured by fraud or false claim, then I think that's why the government is arguing Jeffrey Quavey would be within the purview of this statute. And finally, just with respect to Kristic's analysis under the legislative history and the purpose of the statute, I think it's important to note that at the time we filed our brief, there was pending legislation that would fix this exact problem. It didn't become law, but it's been reintroduced in the same format that cited, I believe it's in our reply brief, and I think that is part of the legislative history of 1546, that they're trying to fix this because it's clear that it's very, very difficult. And even if it's a tie, the cases are clear. The tie has to go to the defendant in a criminal case. Thank you. Thank you. Ms. Sedlowski? May it please the Court, my name is Caroline Sedlowski and I represent the United States. There is no tie in the interpretation of the statutory language. The language of the statute is clear. When read in light of all the canons of instruction. I tend to think it's clear too, but it certainly could be a lot clearer. It could be clearer. I mean, as the Supreme Court found in Dean, every statute has some degree of ambiguity. Whenever you put that many commas in a sentence, there's a problem. It could be improved. It could be improved, but can be understood in light of the canons of construction to interpret all the language of the statute, and certainly in light of the legislative history. Congress has really been focused on one problem in this statute, which is which documents are to be included as prosecuted under this section, and that's why it keeps adding to this list. But even the most recent legislation that's been proposed has been focused on what kind of documents are going to be included. No one's ever made a reference to the fact that this is an ambiguous statute that needs to be corrected in the legislative history. Tell me something. Was it you that raised the issue of standing in this case? It is. What is the problem with standing? Before you go on to the rest of your argument. He has been deported. He's been deported, and so while his conviction, his challenge to his conviction is not moot, his sentence is moot because he served his sentence. He hasn't raised any challenge to his term of probation. Is he under supervised release? His term of supervised release begins at the time that he was released from jail and continues to run while he's out of the country, but in fact the probation has no jurisdiction over him in Togo. He's not actually under any kind of supervision while he's in Togo. He's in Togo because of a separate basis for deportation distinct from this conviction. That would still be a collateral consequence, wouldn't it, even though he's not actively being supervised? No. Well, as the Tenth Circuit found, there is no actual injury. There is no consequence to him because he isn't serving any kind of supervision. Are you saying he's removable even without his? He consented to removal on grounds that did not have to do with this conviction. So your position is this case is entirely moot? The sentencing claim is moot. The conviction claim is moot. But what's moot in terms of you're saying that Part V of the appellant's brief, which deals with the sentence, is moot. Yes. But there's nothing moot about the conviction. No, no. And the court evaluates its jurisdiction on a claim by claim. It obviously has nothing to do with the principle issue. I guess to the defendant, any issue is a principle issue. But the statutory construction issue is certainly not moot. Yes. No, the statutory construction issue is not moot. Just the sentencing claim. Yes. If the court has any other questions for me on any of this point. I don't have any questions. Thank you. Thank you. Did you reserve time? Yes. Yes, Your Honor. Just briefly. Whenever I ask that question, I quake because I'm afraid the answer is going to be yes. Just briefly on the mootness issue because it didn't come up. Obviously, we believe under this court's case, under Jackson, he's still on supervised release. And really the most important collateral consequence from which he suffers. He might want to come back. Well, he might want to come back. And the most important thing is that his conviction under Title 8, I think it's 1143, it is in the government's letter, is that if we went back on resentencing, and we won on the three-point issue, if we could get the judge to lower his sentence to below a year, his conviction might not be an aggravated felony, which carries with it a bar for life. So respectfully, I understand the government's position, but the stakes on that issue are enormous for Mr. Quavey. Thank you. Thanks very much. Thank you very much. Are you pro bono? Are you pro bono? I was appointed as CJA counsel. Okay. Okay. We normally commend and thank pro bono counsels. Not that we don't commend you and thank you. But it's a different level of appreciation. For sure. Thank you. Thank you very much.